and the lead by Todd Schneider May I proceed? May I please report, counsel? My name is James Springer. I am attorney for the appellant Craig Upholstering, Inc. This case turns on the construction of a policy of liability insurance issued to Craig Upholstering, Inc. by defendant Alea North America Insurance Company. The question presented is did Alea have a duty to defend Craig Upholstering and did it breach that duty? The duty to defend is a broad one, much broader than the duty to indemnify. If there is any possibility of coverage, the insurer has a duty to defend. All doubts regarding coverage are resolved in favor of finding a duty to defend. Because of the breadth of the study, there may be a duty to defend an action for which there is in fact no coverage under the policy. What determines the duty to defend are the facts alleged in the underlying complaint, not the legal characterizations, conclusions, theories, or labels asserted by the pleader. For example, in the present underlying complaint, count 1 is labeled breach of contract and count 2 is labeled retaliation. Neither of these labels determines or limits Alea's obligations under the policy of insurance. It is not necessary for the underlying pleading to use language that affirmatively brings the claim within the scope of the policy. If the insurer believes there is no coverage, it must either defend under a reservation of rights or file a timely action for a declaratory judgment. If it does not do either, it is a stop to assert any policy defenses. When the insurer is a stop to deny coverage, the insurer does not have to prove coverage in order to recover. The underlying suit for which Craig Upholstering sought defense was a two-count counterclaim by Gary S. Craig who was working for Craig Upholstering under a redemption agreement. The counterclaim alleges a variety of harms suffered by Gary S. Craig and a variety of wrongful acts by Craig Upholstering. It alleges the following. Gary had suffered a workers' compensation injury as a result of his employment by Craig Upholstering in 2001 for which he had submitted a claim that had been settled. In January 2005, he had suffered a recurrence of that injury as a result of his work for Craig Upholstering. Craig Upholstering knew of the recurrence and knew it was job-related. Gary had asserted a claim under the Workers' Compensation Act and received benefits under that act. Craig Upholstering refused to let Gary work as a consultant and required him to work solely as an upholsterer. Craig Upholstering demanded that Gary procure his own workers' compensation insurance. Craig Upholstering changed the laws so that Gary could not work according to his own schedule. Craig Upholstering discharged Gary. Craig Upholstering interfered with, restrained, coerced and discriminated against Gary in the exercise of rights under the Workers' Compensation Act. These are the allegations for which Craig Upholstering sought a defense. The policy issued by ILEA contains two distinct coverages entitled Workers' Compensation Coverage and Employers' Liability Coverage. The two coverages do not overlap or duplicate each other and there are no cross-references. There is no justification for combining provisions of the two coverages to make a new agreement that the parties did not agree to. Each coverage must be examined separately. The Workers' Compensation Coverage states that where the employee has suffered bodily injury or disease caused by the work, the insurer will pay the benefits required by the Workers' Compensation Act and defend the insured against any claim proceeding or suit. The policy does not limit the claims to those brought before the Workers' Compensation Commission. It states that if any terms of this coverage conflict with the Workers' Compensation Law, that coverage is changed to conform to the law. There are no exclusions in the Workers' Compensation Coverage. The Employers' Liability Coverage applies when an employee has suffered a bodily injury growing out of the work and the injury is not covered by the Workers' Compensation Act. This coverage contains several exclusions and it is these exclusions that counsel for ILEA have cited to the Circuit Court and to this Court. They include liability assumed under a contract, intentional injuries, damages arising out of coercion, criticism, termination, etc. Incidentally, retaliation is not one of the listed exclusions. The critical question then is, is there any possibility that the factual allegations of Gary Craig's counterclaim fall within the provisions of either of these two coverages? The answer is yes. First of all, and contrary to the assertions by counsel for ILEA, Gary Craig clearly alleges that he has suffered bodily injury, namely the original 2001 injury and the 2005 recurrence. The counterclaim does not specify the nature of the injuries, but the record shows that the 2001 injury was carpal tunnel syndrome and cubital tunnel syndrome. Furthermore, Gary alleges that he has made a claim for these injuries. Secondly, Gary alleges a variety of wrongful acts that violate his rights under the Workers' Compensation Act, namely discrimination, coercion, preventing him from work as a consultant, interfering his work by changing the locks, requiring him to procure his own workers' compensation insurance, refusing to pay his salary and wages, and discharging him. Under Illinois Workers' Compensation Law, Craig upholstery was obligated to defend against these obligations, and if it were found liable, it would be subjected to a variety of monetary judgments, including financial benefits in the form of temporary and permanent disability awards, attorney's fees, and penalties. These would be benefits payable to Gary under the Workers' Compensation Law. The contract of insurance says that coverage shall conform to the requirements of the Workers' Compensation Law and not contradict that law. It would be an unreasonable interpretation of that provision to extrude coverage for anything that Gary had a right to under the Workers' Compensation Law. Turning to the employer's liability coverage, Counsel for Leah repeatedly refers to the entire contract of insurance as a workers' compensation policy, as though it provided a defense only to claims brought before the Workers' Compensation Commission or under the Workers' Compensation Act. This is not correct. The employer's liability coverage applies where there has been a bodily injury arising out of the employment that is not cognizable under the Workers' Compensation Act. This says that Leah will defend any such claim proceeding or suit. It is this coverage that excludes intentional harm, coercion, criticism, termination, etc. Gary Craig claimed a bodily injury, which is a cover injury under this insurance. Even with the numerous exclusions, there is a possibility that other of Gary Craig's claims would be covered, for example, requiring him to purchase his own workers' compensation insurance, interfering with his access to the workplace, etc. In order to recover on these theories, Gary would not necessarily have to prove an intentional harm. If Craig-Upholstering simply refused to live up to its legal obligations regardless of its amended state, it could be found liable. Alita's entire coverage defense in this proceeding depends upon the fact that the underlying claim was brought in circuit court rather than before the Workers' Compensation Commission. However, there is nothing that forbids an injured worker from filing any claims he has against an employer in circuit court. As to certain claims, the employer may successfully assert the sole remedy provision of the Workers' Compensation Act. However, that is an affirmative defense the defendant must plead and prove. Even where that defense is available, it does not protect against claims for intentional injuries, wrongful discharge, lack of workers' compensation insurance, and some contractual rights. Alita asserts that it did not receive timely notice of Gary Craig's claim. The counterclaim was received by Craig-Upholstering's attorneys on February 3, 2006, and it was reported to Brister & Company, which was a proper agent to receive notice of claims for Alita, on or about May 8, 2006, a period of three months later. The litigation was still ongoing. Craig-Upholstering filed several motions attacking the plaintiffs, and the intended settlement was not reached until October 5, 2006. Alita had plenty of time to participate in the defense of the underlying claim if it had wished to do so. One motivation for Craig-Upholstering to pay money to Gary Craig by way of settlement was that Alita was not providing any defense, much less any indemnification. Any judgment that Gary received would be collected solely from Craig-Upholstering's own funds. The supposedly earlier and unreported claims cited by Alita were not claims. The 2005 correspondence from Gary and his doctor did not say that Gary had actually suffered a re-injury, but rather that he was in danger of a re-injury if he did not limit his work as an upholsterer. The June 2005 letter from Gary's attorneys says that if litigation is commenced, then Gary will assert his rights under the Workers' Compensation Act. It does not report an on-the-job injury, an accident, or a medical condition. It was not filed with the Workers' Compensation Commission, and it was not filed with the Circuit Court. Alita asserts that the present claim is defeated by the exclusion for liability assumed under a contract, namely the settlement with Gary Craig. That exclusion occurs only in the employer's liability coverage. That supposed contract, i.e. the settlement, occurred only after Alita failed to defend. If that failure or refusal was wrongful, Alita is liable for the settlement. Now, finally, we come to Estoppel, which is where Alita's case collapses. Its agent for receiving reports of claims, Karen Lopez of Grissom Company, knew of the counterclaim by approximately May 8, 2006. Throughout May, June, July, and August of 2006, Craig of Holstein's president and its attorney communicated the underlying claim to Alita's adjuster and its attorney. That adjuster and that attorney believed they had enough information to conclude that because the underlying suit was a civil suit and not an application for adjustment of the claim before the Workers' Compensation Commission, there was no coverage. However, Alita did not send a dial letter to Craig of Holstein. That occurred only after the present suit was filed. Alita did not defend, did not defend under reservation of rights or file an action for a declaratory judgment. Under the allegations of the counterclaim and the terms of the party's contract, the failure to act is a breach and Alita is a stop to deny coverage. For all of these reasons, Craig of Holstein prays that the judgment of the circuit court be reversed and the judgment on liability be entered in favor of Craig of Holstein, Inc. In the alternative, Craig of Holstein prays that the judgment of the circuit court be reversed and the case should be amended for further proceedings. Thank you for your consideration. Your Honor, may I please report? Counsel. My name is Todd Schneider. I represent the defendant and appellee, Alita North American Insurance Company in this case. What I'd like to do is I'd like to jump to what I think is the real crux of the plaintiff's case here, and that is the estoppel issue. I think that the estoppel issue has from the get-go, from the inception of this case, been the driving force, the motivation, and really the sole strategy of the plaintiff in this case. And I say that because I think any reasonable person who takes a look at the counterclaim for contribution, which is a retaliatory discharge claim, which is the claim that plaintiffs seek coverage for, and you look at the insurance, the worker's compensation slash employer's liability insurance policy, I don't think that anyone would reasonably conclude that a policy that applies to bodily injury by accident, that specifically excludes retaliatory discharge claims, and which specifically excludes liability assumed under contract, which is what the plaintiffs did when they settled the claim without giving any notice to Alita prior to doing so. When you consider that, I don't think anyone would reasonably conclude that this retaliatory discharge counterclaim would fall under the provisions of this worker's compensation slash employer's liability policy. For the same reasons, I think that anyone who would reasonably conclude looking at the policy and the requirements that befall upon the plaintiffs, and that is that they give prompt notice at once of a claim, and also that they refrain from making voluntary payments, and if they do so, they do so at their own risk, which is what they did when they settled the underlying claim without giving any notice to Alita. I think that the crux of the plaintiff's case is we can hopefully get someone, anyone, this court, the district court, to somehow overlook all of the policy defenses, and we can arguably do that through the doctrine of estoppel. The problem that I perceive is that they have misapplied the doctrine of estoppel, and specifically I refer to the Bovis case, which provides that the estoppel doctrine only applies when the insurer has, number one, failed to defend the suit under a reservation of rights or sought declaratory judgment, and number two, was subsequently found to have wrongly denied coverage. I should also add, and I think that there's some additional case law that requires the plaintiff to also show prejudice, but I'll leave it to these first two issues. With regard to the first issue, whether or not Alita defended the suit under a reservation of rights, clearly they did not, but whether a declaratory judgment was filed. The courts have said that it's not the requirement that the insurer file a declaratory judgment. In fact, in this case, the declaratory judgment action was filed by the insurer, by the plaintiffs. The reason being is that there's no need to create a rush to the courthouse as to who's going to file it. In fact, Alita's first notice of this claim was when they actually received the declaratory judgment. So absent being clairvoyant, there's no way that they could possibly have filed a deck action before they knew exactly what it was that Alita was claiming. Don't forget that when Alita, excuse me, when the plaintiffs first started to seek coverage for this retaliatory discharge claim, they did two things.  Their first insurer was, the first two insurers, I believe, were Reliance and Allied. And what they did is they sent a copy of the counterclaim for retaliatory discharge to them seeking coverage, defense, and indemnity of this claim. Ultimately, for various reasons, those claims were denied. No deck action was filed. No reservation of rights was filed. Plaintiffs left that. Their next step was to file a claim with Alita. And what they did is instead of sending the counterclaim for contribution for which they were seeking coverage, they sent a Form 45. And I don't know if the court is aware, but a Form 45 in Illinois is the employer's first notice of workplace injury. And on that Form 45 that was submitted to Alita, they identified the date of injury as the original date of injury that went back to when Mr. Craig came in and said, my doctor said I can't do any more work because I'm at risk of doing my, injuring my carpal tunnel syndrome. They did not, and at the specific instructions of Craig Upholstery to Karen Lopez, I believe is her name, at RISR, they were given the specific instruction, do not send the counterclaim. Just send the Form 45. So what did Alita do? Alita gets this Form 45, which they recognized. I've got a workers' compensation policy. I've got a Form 45. I retain my counsel. That was Tina DePaul of my office in Chicago. And we will investigate this claim. What did she do? She went and investigated the claim. She contacted their counsel. He said, no, we haven't filed any workers' compensation claim. She contacted other counsel. She couldn't find, she looked at the commission. She couldn't find any active workers' compensation claim. And, in fact, concluded that there was no workers' compensation claim pending for them, for us to defend. That is the same position that was taken by plaintiffs in response, when they filed a motion to dismiss, in the underlying case, the retaliatory discharge claim, which was count two, that was filed by Gary Craig. Their position, and it's in the briefs, was there is no such claim. He never filed it. He never made a claim for TDB. And, therefore, there's no claim. So everybody came to the same conclusion. There is no workers' compensation claim. And, in fact, the first time that Alita had any notice that what they were seeking, the plaintiffs,  Right after the deck action was filed, we filed an answer denying all material allegations thereof, and subsequently sent a denial letter to complete the requirements. Now, I think the first, with regard to the estoppel issue, the first prong of that test is whether a deck action was filed. I think that was clearly satisfied when the plaintiffs did it. Like I said, the court doesn't distinguish between who files it as long as it's filed. As to the second prong, and it's whether the insurer was subsequently found to have wrongly denied coverage, that goes back to all the policy offenses. And realize that it is the goal of the plaintiffs to try to, through the estoppel doctrine, to keep the court from considering any of the policy provisions. Clearly, a retaliatory discharge claim is not an injury, a bodily injury caused by accident. I deal with a lot of these, what we refer to as 1B claims, which is the employer liability claims. And typically, what it is, is an iron worker, for example, working on a building, falls off a building. He can't sue his employer because of the exclusive remedy provisions of the Workers' Compensation Act. But what he can do is he can sue every other contractor on the job site. So he sues the general contractor, and he sues the fabricator, and he sues the guy that drives the lunch truck, and he sues anybody else that was on site. Those direct defendants then, in turn, there's another, I think it's the Rogers case, turn around and file what are called third-party complaints for contribution against the employer. That's where the 1B claim kicks in. That's where the employer's liability side of the case kicks in. And it is then where we would step in. It's an action. It's a bodily injury caused by an accident. That's where the 1B employer's liability provision of the policy kicks in to trigger a duty to defend and indemnify. That's not the case here. It's a retaliatory discharge claim. The claim that they're seeking coverage for is I was fired by you, Craig Upholstery, because of my assertion of a statutory right that has nothing to do with a personal injury. So, again, you go back to the policy requirements. It just doesn't fit into the policy. Specifically, there's a specific exemption in the policy that specifically excludes retaliatory discharge. I don't know how they can get around that. And, of course, there's also an exclusion that limits liability assumed under contract. Again, it's a provision of the policy that I just don't see how they can get around. And then, of course, you go back again to the issues of the plaintiffs, how they breach the policy. They fail to give notice at once. I've listed in our brief the whole chronology of all the events, and they certainly did not give. I would say that in a less charitable mode, that perhaps from the inception, their goal was to hide the ball from Aliyah. And, you know, the fact that they didn't send in the counterclaim when they sent it to the other insurers, the fact that Mr. Springer, in his deposition, specifically admitted that he never specifically requested anyone from Aliyah to defend and indemnify the counterclaim. Also, with regard to the breach of the policy provision that requires no voluntary payments be made, and if you do so, you do so at your own risk, I think that one of the really key factors in this case is virtually on the same day that Mr. Springer settled the underlying claim, he was on the phone with Tina DePaul from my office and never once made mention to her or to anybody else at Aliyah that he was settling the claim. So, for those reasons, I think that, and I haven't even addressed the issue of prejudice. I don't think the plaintiff has shown any prejudice in this case with regard to the Estoppel Doctrine. But for these reasons, we request that the court sustain the granting of summary judgment in favor of Aliyah and sustain the denial of summary judgment on behalf of the plaintiffs. Unless there are any questions that I can address, thank you very much. Thank you, counsel. Counsel, you may proceed. Thank you. I will address a few issues that Mr. Schneider raised. Count 2, he described as a counterclaim for retaliatory discharge, actually alleges probably 8 or 10 different injuries and 8 or 10 different wrongful acts by Prigge-Upholstren. The label, retaliatory discharge or retaliation, that's what it's called, does not limit Aliyah's obligation. If there's anything in this long list of wrongful acts and harms that Gary has suffered that is defensible, then Aliyah should attempt to get against it. Secondly, the whole issue of my firm and apparently my client supposedly hiding the ball from Aliyah, concealing things from Aliyah, Mr. Schneider said the first notice of this claim was the receipt of the present suit against Aliyah. He goes through a very partial summary of what went on in 2006 when this claim was first reported to Aliyah's broker and Craig-Upholstren's broker. Karen Lopez of the brokerage firm was in charge of the decisions about how to report this incident. It was a very complicated series of charges. She talked to a representative of Craig-Upholstren, Lynn Craig, and Lynn said, Gary's accusing us of all these things. It was Karen Lopez's decision to send the actual counterclaim to two carriers but not to Aliyah. We don't know why she made that decision. It was not something that was told for her to do by Craig-Upholstren. Craig-Upholstren's representative did not say to Karen, send the 45 to Aliyah, send the counterclaim to Reliance. She did not say that. I asked her his deposition. It's referred to in my brief. With regard to my motion to dismiss count two, it is true I filed that before the circuit court in this case, and in one, the first time around, the plaintiff, Gary Craig, was given leave to refile, and I attacked that plea again. I said to the judge, except for retaliatory discharge, there's nothing in count two that would stand up in circuit court, and he disagreed with me. I mean, in some extent, Mr. Schneider's trying to allow or argue what I argued, but he didn't do that. In front of the circuit court, I had to do that myself, and I lost on that. The judge said, yes, all these things do stand a cause of action that can be heard in circuit court. The exclusion for retaliatory discharge and obligations assumed under contract, which Mr. Schneider said to you again, again, these occur in only one provision, the employer's liability. They do not occur in the worker's compensation coverage. Thank you for your attention. Thank you, counsel.